## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **DEBRA ANDRIULLI,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  4:16-cv-00828-RDP** |
| | } | |
| **CAROLYN W. COLVIN,** | } | |
| **Commissioner of Social Security,** | } | |
| | } | |
| **Defendant.** | } | |

## <u>MEMORANDUM OF DECISION</u>

Plaintiff Debra Andriulli ("Plaintiff" or "Andriulli") brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") to deny her claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). *See* 42 U.S.C. §§ 405(g) and 1383(c).  Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

## I.      Proceedings Below

Plaintiff filed her applications for DIB and SSI on September 19, 2012, alleging disability beginning July 5, 2012.  (Tr. 76).  The claim was initially denied on January 4, 2013. (Tr. 76, 197).  After her application was denied, Plaintiff filed a written request for a hearing.  (Tr. 76). On June 4, 2014, Plaintiff received a hearing before Administrative Law Judge ("ALJ") George W. Merchant.  (Tr. 76, 90). On September 30, 2014, the ALJ determined that Plaintiff was not disabled under Sections 216(i) and 223(d) of the Act.  (Tr. 90).

On March 17, 2016, the Appeals Council denied Plaintiff's request for review of the ALJ decision. (Tr. 1-3). Following that denial, the final decision of the Commissioner became a proper subject of this court's appellate review. *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986) (finding the ALJ decision final for purposes of judicial review when the Appeals Council denied review).

Plaintiff Debra Andriulli was 47 years old at the time of the hearing, and 49 years old on September 30, 2014, the date of the decision. (Tr. 14-15). She has some college education and previously worked as a school bus driver, retail cashier, cook, shoe stocker, and commercial cleaner. (Tr. 48-49, 198, 224). She alleges that she hasn't been able to work since July 5, 2012 due to epilepsy, a broken back, bilateral rotary cuff tears, a bulging disc, anxiety, hypoglycemia, seizures, and bronchitis. (Tr. 197).

The precipitating event for Plaintiff's alleged disability occurred on July 4, 2012. On that day, she had her first syncopal episode (*i.e.* seizure) which led to a concussion and injury to the shoulder and mid-back. (Tr. 244-45, 248-49). Various testing followed the seizure and resulting fall. An MRI of Plaintiff's brain from July 13, 2012 was "of normal signal intensity" with "no evidence of acute infarct, hemorrhage, mass or mass effect." (Tr. 246). An MRI of Plaintiff's thoracic spine the following day evidenced "mild acute to subacute compression fractures of the superior endplates of T4 and T6" and "small Schmorl's nodes at multiple levels." (Tr. 247). An MRI of the left shoulder revealed "hypertrophic and acute inflammatory changes at the AC joint;" and "chronic posterior tear." (Tr. 271). An EEG produced "abnormal results most likely representative of an individual with seizures and postictal," and neurologist Dr. Pamela Quinn diagnosed Plaintiff with seizure disorder, initiated treatment with Depakote, and

opined that Plaintiff should not continue working as a bus driver. (Tr. 243, 249). No obvious cause of the syncope was noted. (Tr. 326).

In August 2012, Plaintiff saw Dr. Quinn for a follow-up visit related to the July syncopal episode. (Tr. 335). Plaintiff reported no seizures with the medication Depakote at 250 milligram tablets taken three times a day. (Tr. 335). The following month Plaintiff went for her re-visit, and reported "some memory loss and spacy feeling. She and her husband are worried they may be petit mal seizures. She is not sleeping well. Mood is not great." (Tr. 334). Dr. Quinn's notes from October 31, 2012 revealed that Plaintiff was sleeping better with no seizures. (Tr. 340). Plaintiff's Depakote level was checked on that day which "[w]as already supposed to be done but she [Plaintiff] neglected to do this." (Tr. 340).

Dr. Quinn's notes from October 2012 evidence the last documented visit that Plaintiff had with any doctor about her seizures. The ALJ informed Plaintiff at the hearing: "my last record stopped shortly after you filed in September … So, we need to get records from Dr. Quinn, Doctors Hasting and Yeager of Lake Side North, and then Marshall Medical Center …" (Tr. 38). No such additional documentation was ever submitted. (Tr. 84).

The record does reveal Plaintiff's later doctor visits for other medical issues, including: abdominal pain,[1] bronchitis, orthopedic issues,[2] prescription pain medication misuse,[3] and

---

[1] On September 16, 2011, Plaintiff was diagnosed with a urinary tract infection ("UTI"). (Tr. 366). Because she had a history of UTIs, she was referred to urology for a consultation. (Tr. 379). On September 18, 2011, an ultrasound revealed that Plaintiff's "gallbladder contains sludge." (Tr. 259-60). A HIDA scan performed on September 26, 2011 revealed "normal gallbladder ejection fraction of 64%." (Tr. 261-62). On October 11, 2011, Plaintiff underwent the surgical removal of her gallbladder. (Tr. 264-66, 394-95).

Later, on June 14, 2014, Plaintiff underwent a colonoscopy and was diagnosed with internal hemorrhoids. (Tr. 348-56).

[2] In March 2011, Plaintiff was first diagnosed with acute trochanteric bursitis in her hip and was given an injection to deal with pain and inflammation. (Tr. 293). On September 2, 2011, Plaintiff again reported moderate bilateral hip pain, was again diagnosed with bursitis, and was given a bursa injection. (Tr. 287-91). In October 2011 Plaintiff visited the Urgent Care Clinic after a fall, complaining of low back and hip pain. (Tr. 362).

adjustment disorder.[4]  Of these additional medical issues, the focus here is on bronchitis because Plaintiff bases her argument in this case on the ALJ's assessment of this impairment.

The medical records reveal Plaintiff had several bouts with respiratory issues in 2011. (Tr. 371).  She visited Lakeside North Urgent Care Clinic complaining of head and chest congestion, cough, and wheezing in July, August, and September 2011.  (Tr. 255, 364, 369, 371). Records from May 2012 and July 2013 diagnose Plaintiff with sinusitis.  (Tr. 468, 470).  Then, in April and May 2014, there were additional reports from North Alabama Medical Care that evidence complaints of respiratory issues and some diagnoses of bronchitis and rhinosinusitis.[5] (Tr. 463-66).  On July 5, 2014 Plaintiff was admitted to Marshall Medical Center North for symptoms consistent with "onset of recurrent issues 2.5 months ago when she had a urinary tract infection" and "was given an unknown antibiotic and very rapidly developed very significant diarrhea."  (Tr. 462).  "Note, during this time she has had exacerbations of her 'chronic bronchitis' and has also received doxycycline. … No cough or dyspnea.  No sputum production." (Tr. 462).  The hospital course notes revealed that a pulmonary consult was not available over the holiday, but that the patient was doing "much better" and "was requesting discharge."  (Tr.

---

Plaintiff was diagnosed with mild L4-L5 degenerative disc disease and right paracentral/foraminal disc herniation on L5-S1 on October 14, 2011.  (Tr. 267-69).  She was seen at Lakeside North on August 1, 2012 for pain and swelling in her left lower leg.  (Tr. 256).  She was seen at Premier Orthopedic Surgery by Dr. Matthew Smith on August 31, 2012 for bilateral shoulder pain at a level of "moderate-severe."  (Tr. 251, 282, 388).  On September 7, 2012, an MRI of Plaintiff's right shoulder revealed a "superior labral tear with associated paralabral cyst;" "mild rotator cuff tendinosis," and "hypertrophic arthrosis at the acromioclavicular articulation."  (Tr. 270).  Plaintiff followed-up with an office visit on September 12, 2012 and informed Dr. Smith that she wished to proceed "with shoulder arthroscopy with labral repair."  (Tr. 281, 383-86).  She was diagnosed with osteoporosis by Dr. Brain Scholl on September 17, 2012 but was noted to have healed "quite nicely" and that her back pain was "a whole lot better."  (Tr. 318, 320).

[3] Plaintiff has a history indicating abuse of Lortab and Xanax.  (Tr. 86-87, 244-45, 361).  She continues to take Lortab at 325 milligrams, three times a day for her back pain.  (Tr. 20-21).

[4] An evaluation dated December 4, 2012 diagnosed Plaintiff with adjustment disorder.  (Tr. 345).

[5] Although Plaintiff contends that she was hospitalized in March 2014 for an allergic reaction she had to antibiotics prescribed for pneumonia (Tr. 79; Doc. #11 at 5, 13), there are no medical records to support this claim.

462). Plaintiff was discharged on July 10, 2014 with diagnoses of persistent urinary tract infection and atypical pneumonia. (Tr. 429, 462).

No other medical notes are present in the record evidencing Plaintiff's chronic bronchitis or limiting effects thereof. Plaintiff testified that she attempted to return to work in 2013 but after four hours of working, ended up in the hospital with symptoms of bronchitis. (Tr. 17). She testified that the bronchitis causes her to "run out of breath really fast" and "cough." (Tr. 35). She referenced her doctor's visits in May 2014 for respiratory issues when she "just couldn't breathe" and "could hear it rattling" and "[couldn't] even walk across the floor … I can't even breathe." (Tr. 35-36). She also referenced her albuterol inhaler or "puffer" given to her to "break up the congestion in [her] chest" but added that "it's not helping." (Tr. 36). No information was provided by Plaintiff as to the *daily* limiting effects of her chronic bronchitis.

## II.     ALJ Decision

The Act uses a five-step sequential evaluation process to determine a claimant's disability. 20 C.F.R. § 404.1520(a) and 416.920(a). First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b) and 416.920(b). Substantial gainful activity is work done for pay or profit that requires significant physical or mental activities. 20 C.F.R. § 404.1572(a-b) and 416.972(a-b). If the claimant has employment earnings above a certain threshold, the ability to engage in substantial gainful activity is generally presumed. 20 C.F.R. § 404.1574, 404.1575, 416.974, and 416.975. If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability, regardless of a medical condition or age, education, and work experience. 20 C.F.R. § 404.1520(b) and 416.920(b).

Second, the ALJ must determine whether the claimant has a medically-determinable impairment that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c) and 416.920(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or functionally equals an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. If the criteria for impairment is met or functionally equal, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(iii) and 416.920(a)(4)(iii).

If the impairment is not met or is not functionally equivalent, the ALJ will assess the claimant's residual functional capacity ("RFC") to perform, given their impairment, in a work setting. 20 C.F.R. §§ 404.15245(a)(1) and 416.920(a)(1). The RFC is based on medical and other evidence in the record. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). The ALJ makes an assessment about a claimant's RFC using a two-step process that determines: (1) whether there is an underlying medically-determinable impairment that could reasonably be expected to produce the claimant's pain; and (2) the extent to which the claimant's symptoms would limit claimant's functioning. 20 C.F.R. §§ 404.1545(e) and 416.920(e). To determine the limiting effect of the claimant's impairment, the ALJ must consider the credibility of the claimant's statements about their pain in the context of the record. 20 C.F.R. §§ 404.1529(c)(3) and 416.920(c)(3).

Once the ALJ has determined Plaintiff's RFC, the ALJ will consider in step 4 whether the claimant has the RFC to perform the requirements of his past relevant work. 20 C.F.R. § 404.1520(f) and 416.920(f). If the claimant is found capable of performing past relevant work, then the claimant is not disabled. *Id.* If the claimant is unable to perform past relevant work or has no past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. §

404.1520(a)(4)(v) and 416.920(a)(4)(v). In the fifth step, the ALJ will determine whether the claimant is able to perform any other work in the national economy that is commensurate with their RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Although the claimant must still prove disability, at this point the burden of production shifts from the claimant to the ALJ. The ALJ must provide evidence, in significant numbers, of jobs in the national economy that the claimant can do, given their RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c), 416.912(g) and 416.960(c).

Here, the ALJ determined as a threshold requirement that the claimant met the insured status requirements of 20 C.F.R. §§ 216(i) and 223 of the Act because she remained insured through December 31, 2015. (Tr. 78). Nevertheless, the ALJ determined that the claimant is *not* entitled to benefits under the 5-step sequential evaluation process.

## III.    Plaintiff's Argument for Remand or Reversal

Plaintiff advances a single argument for remand or reversal of the ALJ decision – that the ALJ erred "by failing to credit the claimant with a severe impairment relating to her bronchitis. The claimant's bronchitis (alone or in combination with her other impairments) would also likely cause her to miss work and/or require additional rest breaks during the workday." (Doc. #11 at 15).

## IV.    Standard of Review

Judicial review of disability claims under the Act is limited to two questions: (1) whether the record reveals substantial evidence to sustain the ALJ's decision; and (2) whether the correct legal standards were applied. 42 U.S.C. § 405(g); *see Wilson v. Barnhart,* 284 F.3d 1219, 1221 (11th Cir. 2002). If the Commissioner's findings are supported by "substantial evidence," they are conclusive. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence

is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore v. Barnhart,* 405 F.3d 1208, 1211 (11th Cir. 2005). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). If supported by substantial evidence, the Commissioner's factual findings *must* be affirmed, even if the record suggests otherwise. *Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1159 (11th Cir. 2004) (emphasis added). Nevertheless, while the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). Legal standards are reviewed *de novo*. *Moore*, 405 F.3d at 1211.

## V.    Analysis

Plaintiff argues that the ALJ erred in failing to find Plaintiff's bronchitis to be a severe impairment. (Doc. #11 at 15). For the reasons set forth below, the court finds that substantial evidence supports the ALJ's findings and that proper legal standards were applied.

There is no dispute that the ALJ did not consider Plaintiff's bronchitis to be a severe impairment as defined by 20 C.F.R. 404.1520(c). (Tr. 78). The ALJ did, however, find numerous other impairments to be severe: seizure disorder; degenerative disc disease of the cervical and lumbar spine; T6 compression fracture; hypertension; bilateral carpal tunnel syndrome; right shoulder arthritis; migraine headaches; and adjustment disorder. (Tr. 78). This, quite simply, satisfies step two of the sequential analysis and puts to rest Plaintiff's argument for remand or reversal.

It is well settled that step two is a "threshold inquiry" designed to quickly and efficiently discard claims that have no merit. *Tuggerson-Brown v. Comm'r*, 572 Fed. Appx. 949, 951 (11th

Cir. 2014) ("As we have described, step two of the sequential evaluation acts as a 'screening' or 'filter' to eliminate groundless claims."); *see also Packer v. Comm'r*, 542 Fed. Appx. 890, 892 (11th Cir. 2013). Plaintiff has wholly failed to establish a severe impairment due to bronchitis. *See Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (the claimant bears the burden of proving an impairment is a severe impairment); *see also Barnhart v. Walton*, 535 U.S. 212, 217 (2002) (an impairment must be severe for at least twelve consecutive months to be considered a severe impairment at step two of the sequential evaluation process). But, in any event, as the ALJ proceeded beyond step two of the analysis, any error in failing to find bronchitis as "severe" was harmless. *Id.; see also Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) ("We have explained that the finding of any severe impairment, whether or not it qualifies as a disability, is enough to satisfy the requirement of step two of the sequential evaluation process."). That is, even assuming that Plaintiff is correct that her bronchitis is "severe," the ALJ's recognition of that fact would not, in any way, have changed the step two analysis or the ALJ's analysis beyond step two.

Plaintiff has not clearly delineated any other arguments in support of remand or reversal of the ALJ's decision. (*See generally* Doc. #11). However, because Plaintiff does spend some time setting out the ALJ's finding on residual functional capacity ("RFC") (Doc. #11 at 3-4, 11, 15), the court, in the interest of thoroughness, explains why the ALJ also did not err at the RFC step of the analysis.

At step four of the sequential evaluation, the ALJ considers his assessment of the applicant's RFC and past relevant work to determine whether the applicant can return to her former work. In determining RFC, the ALJ considers *all* medically determinable impairments, not just those found to be "severe." 20 C.F.R. § 404.1545(a)(4)(iii); *see also Lewis v. Callahan*,

125 F.3d 1436, 1440 (11th Cir. 1997) ("The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments.").  There is no rigid requirement that the ALJ specifically refer to every piece of evidence, so long as the ALJ's decision is not a broad rejection of the medical condition as a whole.  *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).  Here, while the ALJ did not specifically refer to Plaintiff's bronchitis in the RFC, he did clearly state that he "considered all symptoms and the extent to which those symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence."  (Tr. 19, 82).  And throughout the report the ALJ discussed Plaintiff's subjective complaints and the medical evidence regarding her bronchitis and other respiratory conditions.  (Tr. 78-89).  Plaintiff does not identify record evidence demonstrating that her alleged bronchitis either caused any limitations beyond those identified by the ALJ or caused or worsened her functional limitations.  *Packer*, 542 Fed. Appx. at 892; *see also Wind v. Barnhart*, 133 Fed. Appx. 684, 690 (11th Cir. 2005) ("a diagnosis or mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work.") (internal citations omitted).  Therefore, even if Plaintiff had properly raised this argument, she would not be able to demonstrate any error.  The decision of the Commissioner is due to be affirmed.

## VI.     Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination.  The Commissioner's final decision is due to be affirmed. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this June 28, 2017.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE